

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6000 | **DATE** | 5/25/2004 |
| **CASE TITLE** | James Reed, Jr. vs. Joanne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Motions for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The parties have filed cross-motions for summary judgment. For the reasons stated in the attached order, Defendant's Motion for Summary Judgment [12-1] is GRANTED; Plaintiff's Motion for Summary Judgment [7-1] is DENIED. The Clerk shall enter judgment in favor of Defendant and against Plaintiff pursuant to Rule 58. It is so ordered. (See attached Opinion and Order).

(11) ■ [For further detail see order attached to the original minute order.]

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES REED, JR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 01 C 6000 |
| vs. ) | Judge Charles R. Norgle |
| ) | |
| JOANNE BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

DOCKETED
MAY 2 7 2004

CHARLES R. NORGLE, District Judge.

Plaintiff James Reed, Jr. ("Reed") seeks judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying him Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have filed cross-motions for summary judgment. For the following reasons, Defendant's Motion for Summary Judgment is GRANTED; Plaintiff's Motion for Summary Judgment is DENIED.

## I. BACKGROUND

Reed was born on May 30, 1950 and has a high school education. From 1966 through 1996, he worked steadily and held a variety of jobs, including truck driver, heavy equipment operator, landscape worker, and carpenter.

In December 1996, Reed experienced serious medical problems. He was hospitalized for seven days due to right hand weakness and slurred speech. He was diagnosed with acute stroke, secondary to cocaine abuse. Additionally, he suffered from hypertension. On December 26, 1996,

1

Reed was discharged from the hospital and ordered to seek follow-up testing, physical therapy, and occupational therapy.

On January 6, 1998, Reed applied for DIB and SSI. The Social Security Administration ("SSA") denied Reed's initial applications and requests for reconsideration. On November 9, 1999, Reed received a hearing before Administrative Law Judge ("ALJ") Percival Harmon. At the hearing, the ALJ heard testimony from Reed himself, Ellis D. Johnson, M.D. ("Dr. Johnson"), and Vocational Expert ("VE") Susan Entenberg. After considering evidence from both the hearing and the written record, the ALJ found that Reed was disabled for the period of December 18, 1997 to January 28, 1999, but not thereafter. Reed subsequently sought review by the Appeals Council, which denied review on July 13, 2001. On July 31, 2001, the Commissioner adopted the ALJ's decision.

On August 6, 2001, Reed commenced this action seeking judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Generally, Reed contends that the mental and physical problems resulting from his stroke continue to preclude employment, and therefore his disability status should not be limited to the period from December 18, 1997 to January 28, 1999. The parties have filed cross-motions for summary judgment which are fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Review

When reviewing an ALJ's decision, the court must affirm if it is supported by substantial evidence and free of legal error. See 42 U.S.C. § 405(g); Kasarsky v. Barnhart, 335 F.3d 539, 543 (7th Cir. 2003) (*per curiam*). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive." Diaz v. Chater, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the reviewing court does not "'reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner.'" Kasarsky, 335 F.3d at 543 (quoting Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000)). The court's task is limited to determining "whether the ALJ's factual findings are supported by substantial evidence." Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004). If the ALJ's decision is supported by substantial evidence, it will be upheld even if an alternative position is also supported by substantial evidence. See Scheck v. Barnhart, 357 F.3d 697, 699 (7th Cir. 2004).

Where, however, "the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002). The Seventh Circuit requires the ALJ to "build an accurate and logical bridge from the evidence to [his] conclusions so that [the court] may afford the claimant meaningful review of the SSA's ultimate findings." Blakes ex rel. Wolfe v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003). It is not enough that the record contains evidence to support the ALJ's decision; if the ALJ does not rationally articulate the grounds for that decision, then the court must remand. See Steele, 290 F.3d at 941. In reaching his decision, the ALJ must confront evidence that does not support his conclusion and explain why it was rejected. See Godbey v. Apfel, 238 F.3d 803, 808 (2001); see also Heron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). With these principles in mind, the court will examine the parties' motions.

## B. Review of the ALJ's Decision

Disability Insurance Benefits and Supplemental Security Benefits are available only to claimants who can establish "disability" under the terms of the Social Security Act. The Social

3

Security Act defines "disability" as the inability to engage in any substantial gainful activity due to physical or mental impairment(s) which can be expected to either result in death or last for a continuous period of not less than 12 months. See 42 U.S.C. § 1614(a)(3)(A). The Social Security Regulations require the ALJ to follow a five-step inquiry process to determine disability status. See 20 C.F.R § 416.920(a)-(f). The following must be analyzed in sequence: (1) whether the claimant is currently employed; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one listed by the Commissioner; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. See id. A claimant has the burden of proving steps one though four. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Once the first four steps are established, the burden shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. See Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

In determining Reed's disability status, the ALJ found that Reed met his burden of proving "disability" under the first four steps of the evaluation process. At step five, the ALJ found that Reed was disabled from December 18, 1997 through January 28, 1999; however, he also found that as of January 29, 1999, Reed had the residual functional capacity ("RFC") to perform some work in the regional economy. Specifically, relying on testimony of the VE, the ALJ opined that Reed could perform light work, such as that required of a hotel housekeeper, a light janitorial worker, and hand packer. Thus, the ALJ determined that as of January 29, 1999, Reed's RFC had changed and he was no longer disabled under the Social Security Act.

Reed raises three issues on appeal: (1) whether the ALJ's decision to the change Reed's physical RFC after January 28, 1999 was supported by substantial evidence; (2) whether the ALJ's

4

decision to change Reed's mental RFC after January 28, 1999 was supported by substantial evidence; and (3) whether the ALJ's credibility findings were proper. The court will address each of these issues in turn.

### 1. *Reed's Physical Residual Functional Capacity*

Effective January 29, 1999, ALJ Harmon determined that Reed's physical condition improved such that it changed his RFC. Prior to January 29, 1999, the ALJ concluded that although Reed could sit without restriction, he could only walk 4 or 5 blocks slowly before needing to rest. (R. 22). Given this fact, along with evidence of significant impairments to the right upper extremity, the ALJ found that Reed was disabled under the Social Security Act. (R. 23). However, after January 29, 1999, the ALJ concluded that Reed could walk/stand up to 6 hours in an 8 hour period. (R. 24, 26). Based on this change in Reed's physical condition, the ALJ ruled that as of January 29, 1999 Reed had the RFC to perform unskilled work on a sustained basis. (R. 24). Reed argues that the ALJ's decision to change Reed's physical RFC was not supported by substantial evidence.

The ALJ based his decision to change Reed's physical RFC on numerous grounds. First, the ALJ relied on the medical report submitted by Dr. Fauzia A. Rana to support his conclusion. Dr. Rana, who examined Reed on January 29, 1999, noted that Reed had no back spasms, tenderness, or difficulty moving; however, Reed did have sight limitation on his right side due to muscle weakness. (R. 185-86). Dr. Rana also noted that Reed's lumbar and lower extremity motion was full, except for a reduction of the right hip flexion. (R. 185). He observed Reed's gait[1] as abnormal, in that he walked with a limp favoring his right side. (R. 185). He diagnosed Reed with residual

---

[1] Refers to a person's manner of walking. See Stedman's Online Medical Dictionary, *available at* http://www.stedmens.com (last visited May 21, 2004) (hereinafter "Stedman's").

5

right-sided weakness, resulting from stroke. (R. 185). Additionally, Dr. Rana's report indicates that Reed related he could walk one mile without the use of an ambulatory aid, although he drags his right foot somewhat while walking. (R. 183).

Second, the ALJ considered Reed's hearing testimony in determining his physical RFC. On November 9, 1999, Reed testified about his abilities and limitations. For example, despite the fact that he lives on the third floor of an apartment building with no elevator, he expressed some difficulty climbing stairs. (R. 51). Additionally, Reed stated that he cleans his own apartment and currently performs maintenance chores for his landlord (R. 38-41); he worked part-time for a trucking company sweeping floors, removing trash, and answering telephones (R. 41-44); his right leg is not as strong as it once was, and it is weaker than the left leg (R. 51); and he could only walk 4 or 5 blocks before having to stop and rest. (R. 50). Additionally, although he stated he does not have a cane, he expressed his belief that he needs one. (R. 50). Reed also stated he can sit for a long time; however, he frequently has to move his right leg while doing so to avoid stiffness. (R. 55). Further, he testified that he continues to have problems with his right-hand grip, alleging he cannot hold a cup of water, and must use his left hand for most manipulations. (R. 55).

Finally, the ALJ considered the November 9, 1999 testimony of Dr. Ellis Johnson, a Board-certified psychiatrist and neurologist who served as medical advisor to the ALJ. After hearing Reed's testimony and reviewing the medical evidence of record, Dr. Johnson opined that Reed was post status cardiovascular accident ("CVA"). (R. 66). He stated that Reed has residual right-sided hemiparesis[2], which is more severe in the upper than the lower extremity, and that there is also slight

---

[2] Defined as "weakness affecting one side of the body." See Stedman's.

expressive dysphasia[3]. (R. 65). Dr. Johnson stated that Reed was still experiencing mild-to-moderate weakness of the right upper extremity, and he also has some slight memory problems. (R. 65-66). He also indicated that Reed's abnormal gait and limp could be caused by weakness in the right leg, due to his post status CVA. (R. 68-69). Dr. Johnson concluded by noting that Reed has made a noticeable improvement since his stroke in 1997, and that further rehabilitation should enhance the level of improvement. (R. 67).

After weighing the evidence, the ALJ concluded that Reed's medical condition improved since he first had his stroke in 1997. Recognizing that this medical improvement affected Reed's ability to work, the ALJ stated:

> Although [Reed] was still demonstrating a slight limp at the time of the internal medicine consultative evaluation on January 29, 1999, there is no objective basis for concluding he could not stand and/or walk consistent with ability to perform light work activity by that time. He could, after all, walk independently at the time of the evaluation, and has apparently never used a cane or other assistive device for ambulation. I should also note that [Reed's] lower extremity weakness has never been that significant, and that he has had almost two years to adjust to his residual upper extremity weakness. Hence, with reasonable precautions, there is nothing to preclude [Reed] from standing and/or walking up to 6 hours per day.

(R. 23-24).

Thus, the ALJ clearly considered all of the relevant evidence regarding Reed's physical condition, including that which was favorable to Reed. See Godbey, 238 F.3d at 808. Despite some evidence to the contrary, the ALJ found that with reasonable precautions Reed is capable of standing and/or walking up to 6 hours a day. While the ALJ need not articulate his reasons for rejecting every piece of evidence, he is required to at least minimally discuss evidence that contradicts his

---

[3]Defined as "impairment in the production of speech and failure to arrange words in an understandable way; caused by an acquired lesion of the brain." See Stedman's.

conclusions. See Godbey, 238 F.3d at 808. Here, the only evidence which contradicts the ALJ's conclusion is Reed's testimony that he can only walk 4 or 5 blocks slowly before having to stop and rest. (R. 50). However, the ALJ found this statement incredible because it is disproportionate to the clinical signs, laboratory findings, or the evidence of the record. (R. 24). The ALJ's finding is evinced by Dr. Rana's January 29, 1999 report which indicates that he is capable of walking at least one mile without the use of an ambulatory aid. (R. 183). It is also established through Reed's testimony indicating that from July through November 1998, he worked for a trucking company for up to five hours a day doing office work and light cleaning. (R. 41-44). Additionally, Reed testified that he currently does maintenance chores for his landlord, albeit on a limited basis. (R. 38-41). Thus, the ALJ's finding on the issue is supported by the record. As such, the court is satisfied with the ALJ's basis for discrediting Reed's contradictory statement. See Diaz, 55 F.3d at 308 (the court will not disturb ALJ's credibility findings unless they are patently wrong).

After weighing the evidence, the ALJ concluded that Reed's physical RFC had improved and he regained the ability to perform unskilled work on a sustained basis. (R. 24). Based on the record before the court, the ALJ's conclusion to change Reed's physical RFC as of January 29, 1999 was supported by substantial evidence. See Johansen v. Barnhart, 314 F.3d 283, 288 (7th Cir. 2002) (indicating that a claimant who performs daily activities such as home exercises, grocery shopping, laundry, and walking one mile per day is not likely disabled).

### 2. *Reed's Mental Residual Functional Capacity*

Reed also argues that the ALJ's decision to change Reed's mental RFC was not supported by substantial evidence. Prior to January 29, 1999, the ALJ found that Reed's memory "would often (i.e., up to one-third of a normal workday) interfere[] with concentration, persistence, and pace on

8

the job." (R. 22). After January 29, 1999, the ALJ determined that Reed had the capacity for concentration, persistence and pace sufficient to perform unskilled work activity on a sustained basis. (R. 24, 26). Ultimately, the ALJ concluded that Reed's capacity of concentration and memory had improved by January 29, 1999 so that he could then perform unskilled work on a sustained basis. (R. 24).

In reaching this conclusion, the ALJ ultimately relied on evidence submitted by two doctors. First, the ALJ relied on a report submitted by Dr. Rama Embar, who conducted a psychiatric consultation with Reed on January 29, 1999. In her report, Dr. Embar specifically opined on Reed's mental capacity. Citing Dr. Embar's findings, the ALJ stated:

> [Reed] reported some problems with memory since his stroke. Although there was no evidence of depression, or any gross psychopathology, Dr. Embar noted the claimant had to pause before he could answer questions, and had some problems finding words. His short and long term memories seemed fairly intact, however, and Dr. Embar diagnosed him with memory difficulty. Dr. Embar also felt that the Claimant could manage his own funds . . . .

(R. 21). Thus, the ALJ acknowledged Dr. Embar's diagnosis of Reed's continued memory difficulties, including his tendency to pause before answering questions and his difficulty finding words.

Despite this diagnosis, however, what the ALJ found more compelling was Dr. Embar's determination that Reed's short and long term memories were fairly intact. This s a reasonable conclusion given entirety of Dr. Embar's report. For example, her report states that Reed was able to recall four digits forward, but not backward; was able to recall two out of three objects; was able to recall what he last ate for dinner and breakfast; and was able to recall the name of his high school and his birthplace. (R. 190). Additionally, Dr. Embar's report indicates that Reed could perform

9

simple arithmetic problems and that he could perform serial threes with some difficulty. (R. 190). He also had accurate memory for various types of information, such as how many nickels are in a dollar, how many weeks are in a year, and the names of large cities and famous people. (R. 190). Although Dr. Embar noted that Reed had difficulty remembering names, he did know the names of both the current and former president of the United States, as well as the name of the mayor of the city of Chicago. (R. 190). These findings support Dr. Embar's conclusion that despite Reed's memory difficulties, his short and long term memories were fairly intact as of January 29, 1999. (R. 190). Hence, the ALJ accurately stated Dr. Embar's conclusions and reasonably relied on them to find that as of January 29, 1999, Reed was capable of performing unskilled work activity on a sustained basis. (R. 24, 26).

The ALJ also adopted the opinion Dr. Charles S. Morris, the state agency examiner who examined Reed on March 29, 1999. (R. 22). Dr. Morris opined that Reed had slight limitations on his daily living activities and his social functioning. (R. 218). He found that Reed often had deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. (R. 218). In adopting Dr. Morris' decision, the ALJ did not elaborate on any of Dr. Morris' findings.

Dr. Morris found that Reed often suffers deficiencies in concentration, persistence, or pace. Reed argues that the ALJ's decision to adopt Dr. Morris' finding is inconsistent with the ALJ's finding that, as of January 29, 1999, Reed had the capacity for concentration, persistence, and pace sufficient to perform unskilled work activity on a sustained basis. (R. 218). However, these findings are not inconsistent given the totality of Dr. Morris' submissions. Dr. Morris indicates that Reed is moderately limited in his ability to maintain sufficient concentration to carry out detailed

10

instructions; however, he is not significantly limited in his ability to understand, remember, and carry out short and simple instructions. (R. 208-09). Thus, Dr. Morris' opinion distinguishes between Reed's ability to perform simple as opposed to detailed instructions. (R. 208-09). Based on this distinction, Reed's deficiencies in concentration, persistence, and pace may not preclude his ability to perform unskilled work on a sustained basis. See Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003) (affirming ALJ's finding that a claimant who often experiences deficiencies of concentration, persistence, or pace is capable of performing semi-skilled work). As such, Dr. Morris' findings actually support the ALJ's conclusion that Reed's mental RFC had improved as of January 29, 1999. Therefore, the ALJ's decision was based on substantial evidence.

### 3. *ALJ's Credibility Findings*

Finally, Reed argues that the ALJ's credibility determination was improper. The ALJ addressed Reed's credibility and found that it was "highly credible" with regard to his condition prior to the medical improvement, but incredible with regard to his condition after the medical improvement. (R. 24). Specifically, the ALJ stated:

> Finally, and for the reasons noted above, I must discount any complaints of debilitating residuals on or after January 29, 1999 as disproportionate to the clinical signs, laboratory findings, and other evidence of record. I should reiterate, however, that I found him highly credible in describing the pain and limitations that existed prior to medical improvement (Social Security Ruling 96-7p).

(R. 24). Thus, the ALJ gave less weight to Reed's statements regarding his condition after January 29, 1999 than he gave to those statements pertaining to his condition thereafter. Reed argues that such a bifurcated finding of credibility defies common sense. The court disagrees. The ALJ simply found that at one time Reed's debilitating residuals were supported by the medical evidence; however, after some medical improvement, this was no longer the case. Based on the ALJ's

instructions; however, he is not significantly limited in his ability to understand, remember, and carry out short and simple instructions. (R. 208-09). Thus, Dr. Morris' opinion distinguishes between Reed's ability to perform simple as opposed to detailed instructions. (R. 208-09). Based on this distinction, Reed's deficiencies in concentration, persistence, and pace may not preclude his ability to perform unskilled work on a sustained basis. See Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003) (affirming ALJ's finding that a claimant who often experiences deficiencies of concentration, persistence, or pace is capable of performing semi-skilled work). As such, Dr. Morris' findings actually support the ALJ's conclusion that Reed's mental RFC had improved as of January 29, 1999. Therefore, the ALJ's decision was based on substantial evidence.

### 3. *ALJ's Credibility Findings*

Finally, Reed argues that the ALJ's credibility determination was improper. The ALJ addressed Reed's credibility and found that it was "highly credible" with regard to his condition prior to the medical improvement, but incredible with regard to his condition after the medical improvement. (R. 24). Specifically, the ALJ stated:

> Finally, and for the reasons noted above, I must discount any complaints of debilitating residuals on or after January 29, 1999 as disproportionate to the clinical signs, laboratory findings, and other evidence of record. I should reiterate, however, that I found him highly credible in describing the pain and limitations that existed prior to medical improvement (Social Security Ruling 96-7p).

(R. 24). Thus, the ALJ gave less weight to Reed's statements regarding his condition after January 29, 1999 than he gave to those statements pertaining to his condition thereafter. Reed argues that such a bifurcated finding of credibility defies common sense. The court disagrees. The ALJ simply found that at one time Reed's debilitating residuals were supported by the medical evidence; however, after some medical improvement, this was no longer the case. Based on the ALJ's

thorough recitation of the medical evidence in his decision, the court will not disturb his credibility determination. See Sims v. Barnhart, 309 F.3d 424, 431 (7th Cir. 2002) (refusing to disturb ALJ's finding that claimant's testimony was not credible where statements made to ALJ were not reasonably consistent to record as a whole); see also Diaz, 55 F.3d at 308 (the court will not disturb ALJ's credibility findings unless they are patently wrong).

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED; Plaintiff's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

ENTER:

CHARLES R. NORGLE, Judge
United States District Court

Date: 5-26-04